McCAULEY, Plaintiff and Respondent, vs. BALSLEY and others, Defendants and Respondents : THE MILWAUKEE ELECTRIC RAILWAY & TRANSPORT COMPANY, Defendant and Appellant, and seven other cases.*

*February 11—March 9, 1943.*

---

* Motion for rehearing denied, with $25 costs, in one case only, on May 18, 1943.

530

For the appellant there were briefs by *Shaw, Muskat & Paulsen,* attorneys, and *Van B. Wake* of counsel, all of Milwaukee, and oral argument by *Mr. Wake.*

For the respondents Nora McCauley and Henry L. McCauley there was a brief by *Max Raskin,* attorney, and *Wm. F. Quick* of counsel, both of Milwaukee, and oral argument by *Mr. Raskin.*

For the respondents R. E. Balsley, Archie·Topping, and Employers Mutual Liability Insurance Company there was a brief by *Milton T. Murray* and *Arlo McKinnon,* both of Milwaukee, and oral argument by *Mr. McKinnon.*

For the respondents Marion Hunkel and Elroy Hunkel there was a brief by *Samuel J. Grossman,* attorney, and *Nathaniel D. Rothstein* of counsel, and oral argument by *Mr. Rothstein* and *Mr. Roy O. Conen,* all of Milwaukee.

For the respondent Anna Winter there was a brief by *Louis Podell,* attorney, and *Ralph J. Podell* and *Alfred R. Gandrey* of counsel, all of Milwaukee, and oral argument by *Ralph J. Podell.*

FAIRCHILD, J.   Of the two important questions which the trial court undertook to answer, one relates to which of the two actors was negligent or whether both were, and the other relates to the amount of damage suffered by the passengers in appellant's car.

The collision occurred and the passengers who were plaintiffs in the circuit court did sustain some injuries.   Whose fault or negligence caused the collision was decidedly in dispute, as was the extent of the injuries resulting to Mrs. Mc-Cauley, Mrs. Winter, and Mrs. Hunkel.

We have reached the conclusion that because of error in the instructions to the jury there must be a new trial, and therefore we do not treat with each of the nine errors assigned by the appellant other than to call attention to what is considered misleading in the proof of damages.   The extent of Mrs. McCauley's injuries for which she seeks to hold appellant and the respondent truck owner and his insurer are to be measured by competent evidence.   Her recital of her sufferings arising from being jarred as she was is competent evidence, but her credibility, the accuracy of her description, and the reliability of her recollection are to be tested by her merits made to appear by her presence and testimony at the trial.   There appears to be some weakness in the showing of the development of the

effects of the shock of the accident upon her, and the court permitted her testimony to be supported by the testimony of her pastor that her reputation for truth and veracity was good, that he would believe her under oath. There had been no attack upon her character. True her testimony was under scrutiny and she had been subjected to "searching cross-examination" which, it may be claimed, had developed some doubt as to the exactness of her description of injuries and resulting effects, but whether this is so or not, each witness must be his own support of his veracity until there has been an effort to bring in impeachment of his character. See *Drexler v. Zohlen,* 216 Wis. 483, 257 N. W. 675; note, 78 A. L. R. 643. "It is quite elementary that a witness is not to be supported by proof of his having a good reputation for truth and veracity, till his reputation in that regard shall have been directly attacked. . . . That rule is the logical result of the other one that the law presumes every person to be reputed truthful till evidence shall have been produced to the contrary, and therefore, for one to take the initiative in establishing that which so needs no support, other than the legal presumption, is useless." *Johnson v. State,* 129 Wis. 146, 154, 108 N. W. 55 (authorities cited).

In the case of Mrs. Hunkel, the doctor who testified as to her condition being caused by the injury appears to have formed his opinion under the impression that she had enjoyed good health before the accident and in ignorance of an injury sustained the preceding August. There are departures from the rules of evidence on medical testimony, slight though they may be considered, which may well be avoided on the new trial. See *Bruins v. Brandon Canning Co.* 216 Wis. 387, 257 N. W. 35; *Hallum v. Omro,* 122 Wis. 337, 99 N. W. 1051.

The evidence as to whether the driver of the truck was negligent in making a left-hand turn was in conflict and presented a jury question. A study of the charge to the jury as given shows that the instructions on this phase of the case

brought confusion as to the rules concerning the rights and duties of the truck driver in making his left turn, and this error entitles appellant to a new trial. The trial court correctly instructed the jury in regard to the motorman's duties, and it is true that at places in the course of these instructions it was pointed out that the streetcar had the right of way in the middle of the block and that the motorman had a right to assume that automobile drivers would respect his right of way. It was also stated that a streetcar is not a "vehicle" within the meaning of the statutes. When it came to the question on the truck driver's negligence, however, the judge instructed the jury that "the degree of diligence to come up to the standard of ordinary care which the law requires varies with" varying circumstances. He then went on:

"You are instructed, members of the jury, that there are certain statutory provisions governing the making of a left-hand turn by the driver of a motor vehicle and that the statutory provisions in this respect impose individual obligations upon the operator of such motor vehicle turning left and he must conform separately to each of such statutory obligations. One statute provides, in part, as follows:

" 'The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid.'

"Another section of the statute provides:

" 'The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision.'

"A person desiring to cross a streetcar track in advance of an approaching car has the right of way, if, calculating reasonably from the standpoint of a person of ordinary care and intelligence so circumstanced, he has sufficient time, proceeding reasonably, to clear the track without interfering with the

movement of the car to and past the point of crossing, assuming that it is moving at a reasonable and lawful rate of speed."

These are the instructions which dealt with the duties of the truck driver in making a left turn in the middle of a block. His conduct at that time was very important and bears directly on the underlying question of who is to be charged with causing the collision. It is considered that under the facts of the case the instructions were misleading. If the reason for reading those statutes was the idea of having a basis for determining ordinary care by a comparison of the situation in an intersection with the situation presented here; it fell short of a complete statement. Without qualifying what was then said by bringing to the jury's attention that it was not to be supposed that those statutes were intended to alter the rules governing the operation of a streetcar in the middle of a block, the court in effect placed as the turning point of the case the question of whether a timely warning of an intention to turn left was given by the truck driver, when as a matter of law much more than a warning of an intention to turn left was to be looked for. The jury should not have been left in any doubt of the fact that the person intending to turn left into a private driveway is not in an intersection as that term is defined in the statutes, and the rights and duties arising under one set of circumstances should not have been mixed with the other in such a way that the distinction between the two most likely would be lost sight of. This instruction disassociated from any modification creates an unwarranted exception to the rules on such turns. The portion of the charge challenged must be considered by itself and it carries the impression that while the parties were not to race to the crossing, it would be fair competition if the truck could reach it first for the truck to turn even though this would require the streetcar to stop to meet the emergency.

The law governing the duty of a driver making a left turn in the middle of a block was carefully considered in *De Baker v. Austin*, 233 Wis. 39, 287 N. W. 720. We were there considering a collision between two automobiles. In the opinion the court discusses statutes which by analogy set the standard of care to be exercised under these circumstances, and it is clear from what is said there that the primary duty for maintaining a careful lookout and calculating reasonably that there is sufficient time to cross in front of the oncoming vehicle is on the driver who is turning left. This does not relieve the approaching driver of all duty of lookout or care, but the turning driver must consider the nature and use of a streetcar. The motorman who is driving it has a right to assume that others will not invade his lane of travel, while the driver turning to the left must proceed with the understanding that the other does not expect him to cross his path, and he must undertake to cross only after "as effective a lookout as stopping would have afforded him" and after a reasonable calculation that in view of all the apparent facts, including the other's speed, he will have time to cross safely before the other reaches the point where the turning driver wants to cross without causing the other to alter his speed. It is true he is only required to use reasonable care whether he crosses at an intersection or in the middle of a block, but the conduct that constitutes reasonable care is not the same in the two situations.

The instructions in question with their references to intersections must have confused the jury, to say the least. That they were prejudicial to the interests of the appellant cannot be doubted. The jury might infer from them that since the truck driver had given a plainly visible sign of intention to turn, and since he got across the track first, he had thus gained the right of way, and they might therefore have failed to consider whether it was negligent for the truck to get into this position in the first place and to give due weight to the instructions as to the rights and duties of the motorman. This leads us to the conclusion that there must be a new trial on the issues

of negligence in order to determine who must pay for the damage caused by the accident.

*By the Court.*—Judgments reversed, and causes remanded with directions to grant a new trial in each case.