# MAYOR AND CITY COUNCIL OF BALTIMORE
## *v.* HARRY ZELL ET AL.

[No. 56, September Term, 1976.]

*Decided January 4, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Richard K. Jacobsen, Chief Solicitor,* with whom were *Benjamin L. Brown, City Solicitor,* and *Harry S. Swartzwelder, Jr., Associate City Solicitor,* on the brief, for appellant.

*Perry A. London* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

In this condemnation action brought by Baltimore City, the City had employed an appraiser to evaluate the subject property but did not call that particular appraiser as a witness. The defendant property owners then called the same appraiser as a defense witness. The City did not attempt to show that the appraiser was biased and did not in any manner attack his credibility. Nevertheless, over the objection of the City, the trial court permitted defense counsel to bring out the fact that the City had initially employed the witness in connection with the case. The principal issue on this appeal is whether, under circumstances such as these, the trial court may in its discretion permit one side to bring out the fact that its witness was initially employed by the other side. We hold that the trial court may permit such disclosure, and we affirm.

On November 18, 1974, the Mayor and City Council of Baltimore filed a petition for condemnation against Harry and Irene Zell and Joseph and Jesse Slevitz, owners of property at 2210 Washington Boulevard in Baltimore City, to acquire the property for highway purposes. At the same time, the City filed a petition for immediate possession and title and deposited $99,000.00 in the court registry. The property had been used by the defendants as a junkyard until the City took possession in 1974.

Trial of the condemnation case began January 19, 1976, before Judge Meyer M. Cardin and a jury, in the Court of Common Pleas of Baltimore City. The only real issue at the trial concerned the value of the property. The City called as an expert witness a real estate appraiser, Mr. Walter A. Reiter, Jr., who testified at length concerning the value of the property. Following Mr. Reiter's testimony the City

rested, and the defendants' attorney then made his opening statement to the jury. The trial court, over the City's objection, permitted the defendants' attorney in his opening statement to tell the jury that one of the appraisers who would be called as a witness by the defendants had initially been hired in the matter by the City. The defendants then called as their first witness Mr. William H. Baldwin, a real estate appraiser who had been engaged by the defendants to make an appraisal of the property.

After Mr. Baldwin's testimony, the defendants presented as their second expert witness Mr. J. Sheridan McClees, Jr. Following some preliminary questions by the defendants' attorney and by the City's attorney concerning Mr. McClees's qualifications as a real estate appraiser, the direct examination of Mr. McClees began as follows:

"Q. (By defendants' attorney) Mr. McClees, were you hired by or on behalf of the Mayor & City Council of Baltimore to make an appraisal of property at 2210 Washington Boulevard?

"(City's attorney) Objection, Your Honor, for the reason previously stated.

"(The Court) He may answer yes or no.

"(The Witness) Yes.

"Q. (By defendants' attorney) When were you hired by the City to make such appraisal? A. Sometime, I think it was, in about November of 1975, or well — maybe October. It was in the last part of 1975.

"Q. And did you, in fact, make an appraisal of the property at 2210 Washington Boulevard for the City? A. I did."

Mr. McClees went on to testify that the value of the property was $148,000.00. This valuation was essentially in accord with that testified to by Mr. Baldwin, but it was considerably higher than the valuation placed on the property by the City's witness, Mr. Reiter.

Thereafter, the jury determined that the value of the property was $148,000.00. From the judgment entered on the

jury's verdict, the City took an appeal to the Court of Special Appeals. Prior to any decision by the Court of Special Appeals, we granted a writ of certiorari to review the case.

This Court has not previously considered the particular evidentiary issue raised by the City on this appeal, namely where one side calls as its own witness someone who had originally been employed in the matter by the other side, whether, in the absence of any attack upon the witness's credibility, the party calling the witness may bring out the fact of employment by the other side. The few cases in other jurisdictions dealing with the issue tend to support the City's position that it is prejudicial error to permit the disclosure of initial employment by the adverse party.

In *Shea v. Hillsborough Mills*, 78 N. H. 57, 96 A. 293, 294 (1915), a personal injury action where the plaintiff called as a witness someone who had been employed by the other side to examine the plaintiff, the court reversed a judgment for the plaintiff, holding that "[t]he [trial] court therefore erred in permitting the plaintiff to show that the employers of the witness were the . . . defendants, unless his credibility was in issue." More recently, in *Logan v. Chatham County*, 113 Ga. App. 491, 148 S.E.2d 471, 473 (1966), a condemnation case, the court held that the trial court properly refused to permit the condemnee to bring out the fact that his expert witness had been originally employed by the condemnor, stating that the questions relating to the witness's employment were irrelevant and prejudicial. To the same effect, *see State v. Biggers*, 360 S.W.2d 516 (Tex. 1962). The rationale of these cases is that the matter of who employed the witness has no relevancy to the issues being litigated, and that the question concerning employment "could only be for the purpose of supporting the credibility of the witness . . . ." *State v. Biggers, supra*, 360 S.W.2d at 517. The cases apply the general rule that a party has "no right to shore up his [own witness's] credibility until he is impeached or his credibility is attacked." *Id.* at 518.

We agree with the opinions in the above-cited cases that the fact that the adverse party originally employed a particular witness is ordinarily not relevant to the issues

being litigated, and that its only purpose is to support the credibility of the witness. We also have no disagreement with the general principle that a party ordinarily may not sustain the credibility of his own witness absent an attack upon credibility by the other side. McCormick, *The Law of Evidence* § 49, p. 102 (2d ed. 1972); Wigmore, *Evidence* §§ 1104, 1122-1124 (Chadbourn rev. 1972); 98 C.J.S. *Witnesses* §§ 471-472, 545. Nevertheless, we believe that the opinions in the above-cited cases, and the City's position in the instant case, represent too rigid an application of the general principle.

The rule that one cannot bolster the credibility of his own witness, absent an attack upon credibility by the other side, is not without exceptions. *See* Annotations in 33 A.L.R. 1220 and 15 A.L.R. 1065. Moreover, the rule is usually applied in completely different circumstances than presented in the instant case, such as an attempt to call an additional witness to testify concerning the good character for veracity of the witness or an attempt to offer a prior consistent statement of the witness solely for the purpose of supporting his veracity. *See, e.g., Coltrane v. United States*, 418 F. 2d 1131, 1140 (D.C. Cir. 1969); *United States v. Adams*, 385 F. 2d 548, 550 n. 3 (2d Cir. 1967); *Homan v. United States*, 279 F. 2d 767, 772-773 (8th Cir.), *cert. denied*, 364 U. S. 866, 81 S. Ct. 110, 5 L.Ed.2d 88 (1960); *Woey Ho v. United States*, 109 F. 888, 890 (9th Cir. 1901), *appeal dismissed*, 191 U. S. 558, 24 S. Ct. 844, 48 L. Ed. 301 (1903); *McPhearson v. State*, 271 Ala. 533, 125 So. 2d 709, 713 (1960); *State v. Harmon*, 278 S. W. 733, 735 (Mo. 1925); *State v. Herrera*, 236 Ore. 1, 386 P. 2d 448, 451-452 (1963); *McCauley v. Balsley*, 242 Wis. 528, 8 N.W.2d 299, 301 (1943); *Johnson v. State*, 129 Wis. 146, 108 N. W. 55, 58 (1906); Wigmore, *Evidence, supra.* In those circumstances, as Wigmore points out, valuable trial time is taken up by the introduction of unnecessary and often cumbersome evidence, as an unimpeached "witness may be assumed to be of normal moral character for veracity . . . ." Wigmore, *Evidence, supra,* pp. 233, 255. However, merely asking a witness a brief preliminary question concerning his employment in connection with the case is not subject to this same objection.

It is a routine practice in trials for an attorney to ask his witness certain preliminary questions which may not be relevant to the issues being litigated, which may go beyond mere identification and which are designed to show that the witness will be somewhat credible or not biased in favor of the side calling him. For example, the educational background or professional status or employment position of a non-expert witness may be asked, or the witness's lack of prior contact with the side who has called him may be brought out. These questions give the jury some knowledge of the individual and a more complete perspective in considering his testimony. Cf. *Kelly v. Redevelopment Authority of Allegheny Co.*, 407 Pa. 415, 180 A. 2d 39, 45 (1962).

We agree that such questions, within reasonable limits, serve the useful function of informing the jury about the witness, and therefore they may be allowed. The extent to which such questions are permitted must, in our view, remain in the sound discretion of the trial judge. In the absence of a clear abuse of discretion in a particular case, the action of the trial judge in permitting or not permitting them will be upheld. In the case before us, there was no abuse of discretion in allowing the defendants to bring out the fact that the witness whom they called had initially been employed in the matter by the other side.[1]

*Judgment affirmed.*
*Appellant to pay costs.*

---

[1]. The City raises a second issue on this appeal, arguing that the trial judge erred in refusing to permit the City's expert witness, Mr. Reiter, to testify concerning a study which he had made of rentals of junkyard properties. However, this study had been made after Mr. Reiter's appraisal in the instant case and was not used by Mr. Reiter in arriving at his opinion of fair market value. In light of this, the trial judge did not abuse his discretion in refusing to allow the testimony.