WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, a
body corporate

v.

ONE PARCEL OF LAND IN PRINCE
GEORGE'S COUNTY, MARYLAND,
Karl Gerber, et al., and unknown owners
(two cases).

Civ. Nos. K–76–792, K–77–1891.

United States District Court,
D. Maryland.

April 17, 1978.

Michael J. Mitchell, U. S. Dept. of Justice,
Washington, D. C., for plaintiff.

James F. Sharkey, Associate County Atty., Upper Marlboro, Md., for defendant Prince George's County.

John R. Miles and Carl H. Lehmann, Upper Marlboro, Md., for defendant property owners.

FRANK A. KAUFMAN, District Judge.

In these cases Washington Metropolitan Area Transit Authority (WMATA) has condemned two adjacent parcels of land in Prince George's County, Maryland, in connection with construction of the Washington area subway system.[1] The respective dates of taking of those two parcels are May 25, 1976 and November 15, 1977. A jury trial to determine the total amount of compensation to which defendant landowners are entitled in connection with those two takings is calendared to be held this week. Pending before this Court are certain pre-trial issues.

I

WMATA originally employed and paid an appraiser, John W. Fincham, to appraise the worth of both of the properties. After receiving Fincham's appraisal, WMATA decided not to call him as an expert at trial and refused to disclose his appraisal to defendants. Both sides agree that Fincham is fully qualified. Indeed, defendants assert that Fincham and Frederic B. Lauterbach, the expert whom WMATA has stated it will call and rely upon at trial, are the only two Members of the Appraisal Institute (MAI's) who are qualified to testify as experts in this case.[2]

Defendants desire to call Fincham at trial. WMATA has no objection. But WMATA continues to refuse to turn over Fincham's report to defendants unless defendants reimburse WMATA for the fee WMATA has paid to Fincham. That defendants are unwilling to do. Both sides agree that defendants may call Fincham as a trial witness and that defendants may speak with Fincham if Fincham is willing so to do. On his part, Fincham has stated he will not talk with defendants before trial unless this Court so orders or WMATA specifically and affirmatively consents. That WMATA will not do. Further, the parties agree that a potential witness has the right not to talk with either party if that is the desire of the witness. The parties also agree that the Court should respect that desire. While in many instances such a witness may be deposed, defendants do not have the right to depose Fincham under the circumstances in this case. *See* Federal Civil Rule 26(b)(4)(B).[3] Accordingly, Fincham may continue to refuse to talk to defendants, or may change his mind and talk to them, as he desires.

Defendants complain that WMATA, as the condemnor, preempted the only two qualified appraisers who are MAI's. But since defendants can now have the benefit of Fincham's appraisal by simply reimbursing WMATA for the latter's fee, defendants can, if they desire, place themselves before trial in the same position in which they would have been if they, rather than WMATA, had originally employed Fincham.

---

1. These two cases are hereby consolidated for trial as requested by both parties. In this opinion only WMATA and the defendant landowners are encompassed within the word "parties." Prince George's County's claim for taxes and the like out of the condemnation award is recognized by both WMATA and defendant landowners. The word "defendants" as used herein refers only to the landowners.

2. Both sides agree that the Appraisal Institute is a prestigious organization.

3. That Rule provides:

(4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A) * * *

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or prepara-

There is no suggestion herein that WMATA paid Fincham more than the latter would have charged defendants if the latter had first retained him.

## II

■ At trial defendants may call Fincham as a witness but may not bring to the jury's attention the fact that he was originally employed by the Government. *Washington Metropolitan Area Transit Authority v. One Parcel of Land, etc.,* 424 F.Supp. 218 (D.Md.1976) relying upon, *inter alia, Dicker v. United States,* 122 U.S.App.D.C. 158, 352 F.2d 455 (1955) (Burger, J.).[4] Defendants have stated that they do not except to that ruling. Defendants, however, contend that they should, in any event, be able to develop at trial that they have not themselves employed Fincham. WMATA, objecting, argues that that might well suggest to the jury that WMATA originally retained Fincham. That objection would appear soundly based. There apparently will be no need in this case for defendants to develop who retained Fincham. Defendants can simply call Fincham or not call him as they desire and if they call him they can develop his general expertise and his particular knowledge of the properties. WMATA has agreed not to challenge either Fincham's qualifications or his knowledge of the properties or of the area in which the properties are located. WMATA has further stated that it gave Fincham no information or data relating to the parcels herein involved, before Fincham undertook and completed

his appraisal, other than information and data relating to location of property and purpose of taking. Thus, there is no basis upon which defendants can contend that WMATA biased Fincham in advance. If at trial defendants are surprised by Fincham's testimony, they have only themselves to blame since they can obtain his report before trial if they pay for it. If they do not desire to pay the price at this time, then they are no worse off now than before WMATA retained Fincham.

WMATA has stated that it expects to cross-examine Fincham, if defendants call him, and challenge his conclusions, the basis for those conclusions, and the structure of his report. If WMATA so does, but refrains from any attack on Fincham's expertise and his knowledge of the properties or of the area, that will not give rise to a right on defendants' part during redirect examination to bring out Fincham's prior employment by WMATA with regard to these parcels of land, though if defendants desire they may develop that Fincham has on other occasions, in connection with other properties, been retained by WMATA or by one or more federal or other governmental agencies if he has in fact been so retained.

## III

The parcels in question are not serviced by sewers and are not programmed to be so serviced until May 1980.[5] The parties agree that the highest and best use of the properties is for town house development and that a willing buyer and a willing seller, as of

tion for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

$$* \quad * \quad * \quad * \quad * \quad *$$

Rule 35(b) relates only to examining physicians and is not applicable herein. There has been no showing by defendants of "exceptional circumstances." as those words are used in Rule 26(b)(4)(B). Indeed, defendants have not even so claimed.

4. *See also* 6816.5 *Acres of Land (Rio Arriba County) v. United States,* 411 F.2d 834, 839 (10th Cir. 1969). For a seemingly contrary view, *see Mayor and City Council of Baltimore v. Zell,* 279 Md. 23, 26–28, 367 A.2d 14 (1977) and other authority discussed by this Court in the 424 F.Supp. case.

5. The parties agree that as of the date hereof it is reasonable to expect that sewer service will be available to the properties in May 1980. However, WMATA has not agreed to the certainty of the same occurring.

the respective dates of taking, would take into account the carrying charges on the properties from those dates until May 1980. The parties initially disagreed as to whether those carrying charges are subject to reduction because they are deductible for federal income tax purposes. *United States v. Leavell & Ponder, Inc.,* 286 F.2d 398 (5th Cir.), *cert. denied,* 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855 (1961), has been cited by WMATA. In that case, the land commissioners and the court, in a non-jury case, assumed "that a prospective purchaser would be a corporation that would 'pay an income tax of 52% or would be an individual as to whom it is reasonable to assume that he would be a person of considerable wealth and income and that his income tax would equal or exceed the corporation rate of 52%,' * * * ." Writing for the Fifth Circuit and commenting that findings based on such an assumption, "so far as we are able to find, are without precedent in any kind of valuation proceedings," Chief Judge Tuttle further wrote: "Certain it is that the record contains no testimony touching either on these matters or on the fact that a rate of return of 2¾%, after deduction of 52% of the total net income 'would be proper.'" (*Id.* at 407.) In this case, defendants seek to introduce testimony along those lines.

■ After originally objecting to any evidence about income tax effects relating to carrying charges, WMATA has withdrawn its objection in that regard.[6] Under the circumstances, if defendants seek to adduce testimony from one or more expert witnesses that such a buyer and such a seller would consider those tax effects, such testimony may be admissible into evidence. In *Olson v. United States,* 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934), Mr. Justice Butler, writing for a unanimous Court, stated:

In respect of each item of property that [market] value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. [Citations omitted.] The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth. [Citations omitted.]

Writing for the majority in *Kimball Laundry Co. v. United States,* 338 U.S. 1, 5–6, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765 (1948), Mr. Justice Frankfurter emphasized:

The value compensable under the Fifth Amendment, therefore, is only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent. Its measure is the amount of that equivalent.

In the trial of this case, this Court will permit the taking of testimony discussed in this Part III and also in Part V, *infra,* if

---

6. Counsel for the condemnor has stated it is taking that position only under the factual circumstances present in this case. With regard to the admissibility of income tax impact in personal injury cases, *see, e.g., Mosley v. United States,* 538 F.2d 555, 558–59 (4th Cir. 1976); *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 287–98 (9th Cir. 1975).

such testimony, as it develops, is based upon data or opinion sufficiently factually nonspeculative and reliable and also sufficiently in conformance with the *Olson* and the *Kimball* standards.

### IV

Defendants originally took the position that they could produce expert testimony with regard to the effects of continuing inflation upon the value of the properties. WMATA objected, relying in large part upon Judge Swan's holding in *United States v. 158.76 Acres of Land, etc.*, 298 F.2d 559, 561 (2nd Cir. 1962):

> The jury was told:
> "Finally, in fixing just compensation, you may take into consideration the present purchasing power of the dollar. Necessarily, damages have to be expressed in terms of money, yet, as a medium of exchange, its value appreciates or depreciates in accordance with the rise and fall of commodity prices. So, it is proper for you to take into consideration in this case the purchasing power of money as it is today."
> The reference to inflation of the dollar was a prejudicial invitation to the jury to be generous to the condemnee. The fair market value of the property must be found as of the date of taking. On the retrial no reference should be made to inflationary trends.

The need to guard against fact finders speculating as to the effects of inflation in determinations of damages has oft been noted. Yet in recent years some courts have permitted the inflation factor to be considered along with reduction-of-the-damage-award-to-present-value, in personal injury cases. *See* Judge Doyle's careful review and analysis in *Steckler v. United States*, 549 F.2d 1372, 1376–78 (10th Cir. 1977). *See also Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331–32 (5th Cir. 1977) (Wisdom, J.). But in a condemnation case,

the condemnee receives a money award. He can purchase land similar to that which is taken from him, if he thinks that by so doing he will achieve desired protection against inflation, or he can invest his money as he chooses. Thus, neither inflation, nor, for that matter, deflation, need affect him because of the condemnation. After originally seeking to have their experts testify with regard to the effects of inflation, defendants have agreed with the above analysis and have dropped their requests in that regard.

### V

■ Defendants assert that the fair market value of the parcels can be expected to increase between the respective dates of taking and May 1980. WMATA contends, as per an affidavit of Lauterbach, that no such increase can be expected and that sales prices of nearby land as of or close to date of taking may have been in excess of fair market value. No evidence as to fair market value at any date or dates in the future is relevant and material. Only evidence keyed to date of taking, which is reasonably nonspeculative and reliable and conforms to *Olson* and *Kimball* standards,[7] may be produced. Whether a piece of land can be expected, during the near and perhaps somewhat foreseeable future, to increase or decrease or remain stable in value is a consideration which, seemingly, every willing buyer and every willing seller take into account in establishing present price. In so doing, they do, however, often indulge in some speculation in reaching their meeting point as to price and their respective decisions to buy and to sell. The extent to which any speculative testimony may be produced and considered in any trial including a condemnation trial must be carefully circumscribed and limited. If, however, for example, sufficient evidence as to trends of sales prices, during a reasonably short period before date of taking and as of date of

---

**7.** *See also Washington Metropolitan Area Transit Authority v. Two Parcels of Land (Fair-* *fax County)*, 569 F.2d 816, 817–19, 820 (4th Cir. 1978).

taking, and as to demographic changes which have occurred reasonably near to date of taking, is produced, then, in this condemnation case, in which the land taken in 1976 and 1977 is not expected to be available for its agreed highest and best use until May 1980, expert opinion evidence with regard to the effect of expected developments between date of taking and May 1980 [8] upon fair market values as of date of taking may be not only material and relevant but also sufficiently nonspeculative and reliable, as to be admissible. The parties are in agreement with that view. On its part, WMATA has stated it will await defendants' production of evidence and reserves the right to object thereto within the standards set forth *supra* in this Part V.

8. Leaving out inflation or deflation factors. *See* Part IV, *supra.*