407 So.2d 938 (1981)
SUN CHARM RANCH, INC., Etc., et al., Appellants/Cross-Appellees,
v.
The CITY OF ORLANDO, Etc., Appellee/Cross-Appellant.
Nos. 79-501, 80-44.
District Court of Appeal of Florida, Fifth District.
December 2, 1981.
Rehearing Denied January 6, 1982.
James E. Foster and Carl W. Hartley, Jr., Orlando, for appellants/cross-appellees.
Jon M. Wilson, Orlando, for appellee/cross-appellant.
SHARP, Judge.
Sun Charm Ranch, Inc., and other landowners appeal following a jury trial in which they were awarded fifty-one thousand five hundred dollars ($51,500) for the taking of their property. The City of Orlando *939 (the condemning authority) cross-appeals the award of two appraiser fees to Sun Charm by the lower court and the procedure followed in the case of allowing Sun Charm to call an appraiser originally retained by the City (but not expected to be called at trial) as its witness on the issue of fair compensation. Sun Charm claims the trial court erred in not permitting it to bring out on the direct examination of this expert or by way of rehabilitation the fact that he was originally employed by the City.[1] The questions in this case are apparently ones of first impression in this State. We affirm the lower court's rulings in all respects.

I. SHOULD A CONDEMNEE BE ALLOWED TO CALL AN APPRAISER ORIGINALLY RETAINED BY THE CONDEMNOR AS ITS WITNESS ON THE ISSUE OF FAIR VALUE OR JUST COMPENSATION?
The weight of authority presently allows the condemnee to call the condemnor's expert witness at trial and present to the jury that witness' opinion on value.[2] The traditional barriers to this practice  work product privilege, attorney-client privilege, and "unfairness"  have been substantially eroded in this context.[3] In Florida, however, a remnant of the "work product" privilege remains in the form of a procedural rule which requires a showing of special or exceptional circumstances[4] before a party can depose an adversary's expert witness who is not to be used at trial.
Permitting the landowner to call the condemnor's appraiser as his witness at trial is consistent with Florida's long-standing tradition of vigilantly protecting the interest of persons whose land is being taken from them by the power of eminent domain.[5] This vigilance has produced rulings which discriminate against the condemnor in such proceedings, and favor the landowner.[6] We refrain from expressing any opinion as to whether or not the condemnor should be allowed to call at trial as its witness, an appraiser the landowner retained but did not plan to call at trial.[7]
In this case, the City's expert, Mr. Pinel, was originally retained by it in 1976 to make an appraisal of the parcel in connection with a project which was later abandoned. When the current eminent domain proceeding got underway he was retained again by the City to assist in the analysis of the various expert opinions on value involved with the multiple parcels, although he was not scheduled to be a witness for the City because of a "conflict of interest" which had developed since his original employment. In order to be able to testify, Mr. Pinel was required by the court to *940 update his original appraisal.[8] At trial, he testified that the landowners' parcel was worth sixty-six thousand dollars ($66,000), and another appraiser for the landowner testified it was worth sixty-one thousand to sixty-four thousand eight hundred dollars ($61,000  64,800). The City's appraiser testified it was worth fifty-one thousand five hundred dollars ($51,500)  the amount awarded by the jury.
The City argues it was error (although possibly "harmless" in this case) to require Mr. Pinel to update his 1976 appraisal, and to assess the City with his expenses. Because Mr. Pinel was in fact being retained by the City in connection with these same condemnation proceedings, although not as a prospective witness, he clearly must have been well aware of the current value of the land, and there was no showing by the City of any untoward expense or hardship on Mr. Pinel's part, to update his prior opinion under these circumstances. We therefore conclude that the trial court did not err in requiring his testimony, or in allowing the expenses thereof to be assessed against the City.[9]

II. SHOULD THE CONDEMNEE, WHO HAS CALLED AN APPRAISER AS HIS EXPERT WITNESS, BE ALLOWED TO BRING OUT ON DIRECT EXAMINATION OR ON REDIRECT TO REHABILITATE THE WITNESS, THE FACT THAT THE WITNESS WAS ORIGINALLY RETAINED BY THE CONDEMNOR?
An examination of decisions outside Florida shows that courts have reached different conclusions on this issue.[10]In City of Baltimore v. Zell, 279 Md. 23, 367 A.2d 14 (1977), the court characterized this question as a kind of "routine background" question attorneys are permitted to ask for the purpose of establishing the status and credibility of a witness. This view appears to miss the point that such a revelation is such a powerful nugget of information it is anything but "routine."
In Arkansas State Highway Comm'n v. Phillips, 252 Ark. 206, 478 S.W.2d 27 (1972), the court recognized the strong impact of this information, but concluded that it was highly relevant and legitimate. This holding is consistent with Arkansas' common law rule that a party can attack an adversary in any case by showing he consulted an expert and then failed to call him.
Florida has no common law rule similar to Arkansas', and we are reluctant to adopt a version of it for our State. The relevancy of this evidence is the inference that the party who fails to call an expert is covering up harmful evidence or concealing bad facts. But there are many other reasons why an expert consulted prior to trial may not be called: inadequate background and qualifications; ability to testify in court not as good as another available expert's; scheduling problems; fees too high; testimony cumulative to another expert's. Further, expert opinion is not "fact." It is supposed to help the fact-finder discern the truth of the matter in controversy. Such opinions often vary and at trial, the experts may absolutely contradict one another. So long as it is legitimate and honest, each party should be free to seek out and produce at trial the expert testimony most favorable to his case. We question the fairness of a rule that would require a party to explain and apologize to the jury for not having called an expert witness to testify.
Most jurisdictions do not permit this line of questioning.[11] In State v. Biggers, 360 S.W.2d 516 (Tex. 1962), the court said the fact of prior employment was not relevant to the issues in the case and it could only serve to create the unjustifiable impression with the jury that the condemnor was suppressing evidence.
And a decision not to call as a witness one employed to investigate and evaluate *941 facts and report an expert opinion is not a suppression of evidence. 360 S.W.2d at 518.
Agreeing with Texas, the court in State ex rel. Smith v. Wilkinson-Snowden-McGehee, Inc., 571 S.W.2d 842 (Tenn. App. 1978), pointed out that there was no real harm done in excluding such testimony, but its allowance could do much harm. It noted that jury verdicts in cases where this testimony was allowed often come in very close to the "rejected" expert's appraisal, demonstrating that juries tend to give too much weight to that witness' testimony.
In Logan v. Chatham County, 113 Ga. App. 491, 148 S.E.2d 471 (1966), the Georgia court rejected the allowance of this testimony because it would be too prejudicial and harmful to the party not calling the witness.
Neither party to a condemnation case is bound by rejected opinions of expert witnesses employed by them to appraise realty being condemned and cannot be prejudiced by the admission in evidence of rejected appraisals made at their instance. 148 S.E.2d at 473.
This view appears to us to be the better reasoned and we adopt it for our court. Allowing a party to bring out the fact that an expert was first hired by the condemnor and then rejected would tip the scales of justice too heavily against the condemnor. If the condemnor is trying to cover up or hide harmful testimony, the antidote is the rule followed in this case of allowing the condemnee to call the witness and present his testimony.
Even though the rule barring on direct examination the fact that an expert witness was originally retained by the adverse party may be controlling in this State, Sun Charm argues it should have been allowed to present this fact on rebuttal to rehabilitate Mr. Pinel's testimony.[12] There is some authority for this view.[13] However, Sun Charm did not proffer this testimony to the court following Pinel's cross-examination and it failed to argue its admissibility at that point to rehabilitate Mr. Pinel. Therefore, this issue is not properly preserved for appeal.[14] Even if it had been, we question whether the fact of prior City employment would have been relevant to "rehabilitate" Mr. Pinel under these circumstances. His lack of bias, veracity, and credibility were not in any way challenged on cross-examination  just the method of valuation he employed in making part of his appraisal.
AFFIRMED.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] The trial court also ruled Sun Charm could not ask any questions of this witness which would establish he had been originally retained as an appraiser by some unidentified party other than Sun Charm. A clear inference the jury could draw from this is that the witness was retained by the City, and therefore we consider the two rulings as being essentially the same, differing only in degree of directness.
[2] Arkansas State Highway Comm'n v. Phillips, 252 Ark. 206, 478 S.W.2d 27 (1972); Town of Thomaston v. Ives, 156 Conn. 166, 239 A.2d 515 (1968); Urban Renewal & Community Dev. Agency of Louisville v. Fledderman, 419 S.W.2d 741 (Ky. 1967); Rancourt v. Waterville Urban Renewal Auth., 223 A.2d 303 (Me. 1966); City of Baltimore v. Zell, 279 Md. 23, 367 A.2d 14 (1977); State v. Steinkraus, 76 N.M. 617, 417 P.2d 431 (1966); State v. Biggers, 360 S.W.2d 516 (Tex. 1962). But see 5 Nichols, Eminent Domain 18-281 (3d Rev.Ed. 1980).
[3] Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455 (1962).
[4] Fla.R.Civ.P. 1.280(b)(3)(B).
[5] Pinellas County v. Carlson, 242 So.2d 714 (Fla. 1970); Shell v. State Road Dep't, 135 So.2d 857 (Fla. 1961); Cheshire v. State Road Dep't, 186 So.2d 790 (Fla. 4th DCA), cert. denied, 192 So.2d 493 (Fla. 1966).
[6] See Pinellas County v. Carlson; Shell v. State Road Dep't.
[7] See Zuberbuhler v. Div. of Administration, State Dep't of Transp., 344 So.2d 1304, 1308 (Fla. 2d DCA 1977), cert. denied, 358 So.2d 135 (Fla. 1978). But see Logan v. Chatham County, 113 Ga. App. 491, 148 S.E.2d 471 (1966).
[8] Hungerford v. State Road Dep't, 212 So.2d 782 (Fla. 2d DCA 1968).
[9] See Dade County v. Renedo, 147 So.2d 313 (Fla. 1962); Cheshire v. State Road Dep't, 186 So.2d 790 (Fla. 4th DCA 1966).
[10] Annot., 71 A.L.R.3d 1119 (1976).
[11] 5 Nichols, Eminent Domain 18-282 (3d Rev.Ed. 1980).
[12] Mr. Pinel's testimony was challenged on cross-examination because he based his opinion, in part, on a higher land use than the current zoning for the parcel allowed, and there was no showing it could or would be used for the higher use. Accordingly, the trial judge struck that part of Pinel's testimony dealing with the "reproduction" or "cost" method of valuation. However he allowed the balance of Pinel's testimony dealing with value based on "market" and "income" to stand. Some one hundred pages of Mr. Pinel's testimony remained for the jury's consideration.
[13] Cf. State v. Biggers, 360 S.W.2d 516 (Tex. 1962) (Right to use fact of prior employment to shore up testimony after impeachment).
[14] St. Joe Paper Co. v. United States, 155 F.2d 93 (5th Cir.1946); see Browder v. DaCosta, 91 Fla. 1, 109 So. 448 (1925); Diaz v. Rodriguez, 384 So.2d 906 (Fla. 3d DCA 1980).