559 So.2d 330 (1990)
JACKSONVILLE TRANSPORTATION AUTHORITY, a Body Politic and Corporate and an Agency of the State of Florida, Appellant,
v.
ASC ASSOCIATES, a North Carolina General Partnership, et al., Appellee.
No. 89-1894.
District Court of Appeal of Florida, First District.
April 3, 1990.
Rehearing Denied May 7, 1990.
*331 Stephen Stratford, of Arnold & Stratford and William S. Graessle of Mahoney, Adams & Criser, Jacksonville, for appellant.
David W. Foerster of Foerster & Yerkes, Jacksonville, for appellee.
WIGGINTON, Judge.
Jacksonville Transportation Authority (JTA) appeals the "Final Judgment in Condemnation" directing that the defendant/landowner ASC Associates (ASC) recover from JTA the sum of $2,489,712 plus interest, consistent with the jury's verdict on the value of the property taken and severance damages. JTA raises three points on appeal urging that its right to a fair trial was destroyed; that there was no competent evidence upon which severance damages could have been based; and that the trial court erroneously allowed the jury to consider testimony concerning speculative future uses of the subject property. Because we conclude that JTA did not receive a fair trial, we reverse and remand for a new trial.
Pursuant to resolution, JTA filed its complaint for condemnation seeking to condemn certain parcels of real property located in downtown Jacksonville for the purpose of constructing the initial segment of Jacksonville's Automated Skyway Express System (ASE) and its appurtenances. The sole parcel at issue at trial was referred to as ASE Parcel No. 2, an undeveloped tract of land derived from a parent tract owned by ASC comprising the project known as the Enterprise Center office, hotel and commercial development  a portion of a master plan of development established by ASC and a joint venturer in 1982. The initial implementation of that plan was the Florida National Bank Building which then led to the building of the Omni Hotel and a 1,000-car parking garage.
An "Order of Taking" for the subject property was shortly thereafter entered and defendant ASC Associates filed its answer demanding full compensation for the property taken as well as all other damages allowed by law, including severance damages. Accordingly, JTA deposited $863,400 into the court registry as its good faith estimate of the value of the property taken. These funds were ordered distributed to ASC by the court.
During trial, JTA presented expert appraisal testimony to establish full compensation in the amount of $863,400 with no severance damages to any of the remainder of ASC's property. To counter, ASC offered appraisal testimony of full compensation and severance damages ranging between $3,870,900 and $4,146,250. The jury returned its verdict finding the value of Parcel 2 to be $1,593,960 and the remaining property to have suffered severance damages in the amount of $895,752, for a total verdict of $2,489,712. The circuit court entered its final judgment in conformance with the verdict, allowing credit for the $863,400 previously deposited by JTA and distributed to ASC.
*332 As its first and most significant point on appeal, JTA argues that its right to a fair trial was destroyed by ASC's presentation of testimony by appraiser Walter Lampe who had originally been retained by JTA but who was not to be called by it at trial. Over JTA's objection, ASC engaged Lampe in the following colloquy:
Q. Mr. Lampe, did you make an appraisal of Parcel 2 in the subject proceedings?
A. Yes, sir.
Q. Did you make it for Faison? [ASC general partner]
A. No, I did not.
MR. FOERSTER [counsel for ASC]: Thank you. I have no further questions.
JTA's motion for mistrial was denied by the trial court.
During closing arguments, ASC's attorney posed the following to the jury:
They [JTA] say, we want to be fair, but do they really?
And let me suggest something that happened in this case that you probably don't even remember, and that involves a witness by the name of Walter Lampe. He said three things, three things only: first, Mr. Lampe is a M.A.I. appraiser; secondly, he said he had appraised a part of Enterprise Center for Henry Faison; thirdly, he said he had appraised Parcel 2, the subject property. He said, I did not appraise Parcel 2 for Henry Faison. Who did he appraise it for?
JTA's motion for mistrial was again denied. It was JTA's position below and presently on appeal that regardless of any other evidence presented at trial, the jury by virtue of the above testimony and argument was given the distinct and unequivocal impression that JTA was trying to hide unfavorable evidence. As support for its position that a mistrial was required, JTA relied on the decision in Sun Charm Ranch, Inc. v. City of Orlando, 407 So.2d 938 (Fla. 5th DCA 1981), and decisions cited therein, holding that such questions and argument are not only irrelevant but undermine the right to a fair trial on full compensation.
We agree with JTA's position on this point. In Sun Charm Ranch, the City of Orlando (the condemning authority) cross-appealed a taking award challenging, inter alia, the procedure followed by the trial court which allowed Sun Charm (the condemnee) to call an appraiser originally retained by the City but not expected to be called at trial as its witness on the issue of fair compensation. On the other hand, Sun Charm claimed the trial court erred in not permitting it to bring out on the direct examination of this expert or by way of rehabilitation the fact that he was originally employed by the City. In affirming the lower court's rulings, the Fifth District Court of Appeal addressed the issues separately, first holding that a condemnee may call the condemnor's expert witness at trial and present to the jury that witness' opinion on value.
However, the court next turned to the issue pertinent here and specifically held that the condemnee, who has called an appraiser as his expert witness, may not be allowed to bring out on direct examination or on redirect to rehabilitate the witness the fact that the witness was originally retained by the condemnor. In adopting as the "better reasoned view" the opinion of the Georgia court in Logan v. Chatham County, 113 Ga. App. 491, 148 S.E.2d 471 (1966), the Fifth District observed that "[a]llowing a party to bring out the fact that an expert was first hired by the condemnor and then rejected would tip the scales of justice too heavily against the condemnor." 407 So.2d at 941.
The court cited decisions from other jurisdictions arriving at similar conclusions and prohibiting this line of questioning. For example, it referred to State v. Biggers, 360 S.W.2d 516 (Tex. 1962), wherein the Texas court held that permitting such line of questioning could only serve to create "the impression with the jury that the [condemnor] was suppressing evidence." Id. at 517. The Fifth District also cited a Tennessee court's decision in State ex rel. Smith v. Wilkinson-Snowden-McGehee, Inc., 571 S.W.2d 842 (Tenn. App. 1978), pointing out that the allowance of such testimony could do "a great deal of mischief and harm." Id. at 843. Moreover, as was observed by the Tennessee court, the *333 Fifth District noted that the "jury verdicts in cases where this testimony was allowed often come in very close to the `rejected' expert's appraisal, demonstrating the jury's intent to give much too much weight to that witness' testimony." 407 So.2d at 941.
Turning to the instant case, although the initial series of questions by Mr. Foerster may have been equivocal, his later emphasis of Walter Lampe's testimony during closing argument leaves no doubt as to the motive and intent of ASC in presenting this testimony. Even though JTA was not mentioned by name as the other party who retained Lampe, "a clear inference the jury could draw from this is that the witness was retained by the City...." Sun Charm, 407 So.2d at 939, n. 1. Thus, the potential for prejudice is the same. We are concerned, as was the court in Wilkinson-Snowden-McGehee, that the jury could have given too much weight to such irrelevant testimony to the detriment of JTA. Although mindful that a new trial will be enormously expensive and time consuming for the parties, we nonetheless cannot condone such tactics which work to undermine the fundamental fairness of a trial.
In remanding for a new trial, we remind the lower court and the parties that the issue of valuation and the evidence presented on that issue must be restricted to the value of the land taken at the time of the lawful appropriation. Yoder v. Sarasota County, 81 So.2d 219 (Fla. 1955). Although in Yoder, the supreme court did hold it appropriate "to show the uses to which the property was or might reasonably be applied, and the damages, if any, to the adjacent lands," nonetheless, "the value must be established in the light of these elements as of the time of the lawful appropriation." Id. at 221 (emphasis in original). The supreme court admonished that "[i]t is not proper to speculate on what could be done to the land or what might be done to it to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date." Id.
For instance, in Division of Bond Finance v. Rainey, 275 So.2d 551 (Fla. 1st DCA 1973), the landowners purchased land lying directly across the street from one of the legislative towers then recently constructed as a part of the state capitol. They formulated plans which contemplated the acquisition of the land and the construction thereon of a high-rise office tower which the evidence later established to be the highest and best use of the property. The owners made additional investments following the purchase of the property in pursuance of their plan by entering into contractual relations with an architect who in fact prepared plans, specifications and drawings for the construction of the building and a parking garage. The owners made further investments in the securing of firm loan commitments for the acquisition of the land and construction of the planned improvements. Next, investments were made
in securing boundary and topographical surveys; in securing engineering tests and analyses of subsurface soil conditions; in entering into contractual relations with a building contractor who worked with the owners and their architect in the preparation of plans and specifications for the contemplated improvement, and who in fact commenced construction of the building under a written contract with the owners to construct the improvements within the limits of the loan commitments theretofore secured.
275 So.2d at 552. However, after the owners announced their intentions to start construction of the office building complex, certain state governmental officials registered objections, as a result of which negotiations commenced between the owners and the state executive department toward an agreement whereby the owners would convey to the state the land at a figure which would make them whole in light of the investments made and expenses incurred. Nonetheless, when the proposed agreement was submitted to the legislature, such submission was rejected and instructions given to commence acquisition of the property by eminent domain. Suit was subsequently instituted during which expert witnesses whose testimony was objected to by the state testified that the additional *334 investments made by the owners over and above the cost of the raw land were made in furtherance of the highest and best utilization of the property, were prudent investments and in fact increased the value of the raw land to the amount testified to by them. Accordingly, in its instructions to the jury, the trial court charged that in arriving at the fair market value of the land, the jury could take into account not only the amount paid by appellees for the raw land itself but also the extent to which other investments made by the owners in the development of the land for its highest and best use added to the fair market value of the land as of the date the suit was filed.
In affirming, this court held
... the trial court ruled correctly in holding that the investments made and expenses incurred by appellees in the development of their bona fide plan to utilize the land owned by them in a manner consistent with its highest and best use were proper elements to be considered by the jury in determining the extent to which such investments and expenses enhanced the value of the raw land for the purpose of determining its fair market value at the time of taking. It cannot be reasonably contended that such elements would not be considered by a willing buyer interested in purchasing the entire package and completing the project at its stage of completion on the date this suit was filed.
Id. at 554.
In comparison, we do not consider the circumstances as reflected in the instant record of the development comprising Parcel 2 to be similar to the circumstances in Rainey. During trial there was a great deal of testimony by experts hired by both parties as to future uses of the subject property, including the possibility of the building of a large parking garage on the severed land. Prior to trial, JTA moved the court in limine to exclude any improper evidence offered by ASC including conceptual plans, improvements or developments which might be made at some unannounced future date involving the taken parcel or ASC's remaining lands. In response, the court held in an amended order that prior to ASC's presentation of any testimony or evidence on the issue of severance damages, a proffer was required. Although at trial the court properly and consistently limited the testimony of expert witnesses along those lines, a great deal of testimony was permitted and exhibits entered revealing or suggesting such speculative future uses. The parties, consequently, are cautioned to avoid the introduction of such evidence and testimony on retrial.
Finally, we are concerned with the fact that JTA was apparently surprised by certain expert testimony and evidence presented by ASC contrary to ASC's assertions and representations made during discovery and the pre-trial conference. We trust that on retrial, the parties will abide by the rules of discovery.
In conclusion, because JTA's right to a fair trial was destroyed due to testimony and argument made by ASC from which the jury could clearly infer that the expert witness earlier had been retained by JTA, we must reverse and remand for a new trial. Our holding obviates the need to address the remaining points in any further detail.
REVERSED and REMANDED for a new trial.
SHIVERS, C.J., and BARFIELD, J., concur.