817 So.2d 968 (2002)
Wane BOGOSIAN, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 3D99-0255.
District Court of Appeal of Florida, Third District.
May 29, 2002.
*969 Tilghman & Vieth, P.A., and Robert C. Tilghman, Miami, for appellant.
James K. Clark, Tampa, for appellee.
Before COPE, GREEN and SORONDO, JJ.

On Motion for Rehearing
COPE, J.
On consideration of the appellee's motion for rehearing, we withdraw the previous opinion and substitute the following opinion.
Wane Bogosian, plaintiff below, appeals a final judgment in his action against defendant-appellee State Farm Mutual Automobile Insurance Co. for uninsured motorist benefits. We reverse.
Plaintiff was injured in a 1995 automobile collision at the Golden Glades flyover of Interstate 95 in Miami-Dade County. Plaintiff was a passenger in a Corvette being driven southbound in the second-from-the-left lane of I-95. The lefthand lane of I 95 becomes a flyover at the Golden Glades. On approaching the ramp for the flyover, a car in the lefthand lane ("the phantom vehicle") abruptly veered into plaintiffs lane, striking the Corvette and sending it into a retaining wall. Plaintiff was injured. The phantom vehicle did not stop and was never identified.
Plaintiff sued State Farm for uninsured motorist benefits on account of the injuries caused by the phantom vehicle.[1] Plaintiff *970 also sued the Florida Department of Transportation ("D.O.T."), alleging that the Golden Glades flyover was negligently designed and that the signage was inadequate. Plaintiff contended that because of these problems, motorists in the I-95 lefthand lane would, upon approaching the flyover ramp, misperceive it as an exit and abruptly change into the second-from-the-left lane.
D.O.T. moved for summary judgment. In opposition, plaintiff filed the affidavit of Kenneth Bynum, an engineer and accident reconstruction expert, who outlined plaintiff's negligence claims against D.O.T. D.O.T.'s motion was denied. In 1998, D.O.T. settled with plaintiff, leaving State Farm as the sole defendant.
In 1999, the case came to trial. On the morning of trial, State Farm informed plaintiff for the first time that State Farm would defend the case by saying that the accident was attributable to the negligence of the D.O.T. State Farm also disclosed that it had served a subpoena on Kenneth Bynum for trial, even though Mr. Bynum was not on State Farm's witness list. State Farm's position was that D.O.T. should appear on the verdict form as a Fabre[2] defendant.
Plaintiff objected that at no time had State Farm ever pled that the accident was attributable in any way to D.O.T., and that plaintiff was unfairly surprised by being informed of State Farm's position on the morning of trial. Plaintiff asserted that this late notice left no opportunity to obtain evidence or witnesses to respond to State Farm's case with respect to D.O.T. Plaintiff also objected that State Farm had never listed Mr. Bynum as a witness.
The trial court overruled plaintiff's objections and allowed State Farm to proceed. The court accepted State Farm's argument that plaintiff was already very familiar with Bynum's opinions regarding the D.O.T.'s negligence, since Bynum was originally plaintiff's expert. The D.O.T. was placed on the verdict form as a Fabre defendant. The jury returned a verdict finding D.O.T. 70% at fault for the accident, and the phantom driver 30%. Plaintiff has appealed.
We respectfully disagree with the trial court and conclude that the plaintiffs objections were well taken. The Florida Supreme Court has held that:
[I]n order to include a nonparty on the verdict form pursuant to Fabre, the defendant must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty. The defendant may move to amend pleadings to assert the negligence of a nonparty subject to the requirements of Florida Rule of Civil Procedure 1.190. However, notice prior to trial is necessary because the assertion that noneconomic damages should be apportioned against a nonparty may affect both the presentation of the case and the trial court's rulings on evidentiary issues.
Nash v. Wells Fargo Guard Servs., Inc., 678 So.2d 1262, 1264 (Fla.1996) (emphasis added). State Farm failed to comply with these mandatory requirements.
The pleadings must be perfected to give the plaintiff fair notice that the defendant intends to try to prove culpability on the part of a nonparty Fabre defendant, in this case D.O.T. It is true that plaintiff was thoroughly familiar with Mr. Bynum's *971 opinions regarding D.O.T.'s negligence. However the prejudice to plaintiff arises because, in the absence of a pleading creating fair notice, plaintiff had no opportunity to plan a defense or gather evidence and witnesses in opposition to State Farm's position.[3]
When confronted with the fact that State Farm intended to proceed to trial on an unpled Fabre theory, the trial court could either sustain plaintiff's objection and exclude the unpled theory, or continue the case and allow State Farm to amend its pleadings. See Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561, 563 (Fla.1988). We conclude that there must be a new trial.
Plaintiff is also correct that Mr. Bynum should have been excluded as a witness because State Farm had not listed him on its pretrial catalog. The original pretrial catalogs were filed in this case in 1997, when D.O.T. was still a defendant. Plaintiff listed Bynum as its expert witness. State Farm did not list Bynum, or any expert witness, on the issue of the D.O.T.'s negligence. State Farm did include a catchall item indicating that its witness list included "Those witnesses listed on the other Pre-trial Catalogues filed herein."
In 1998, plaintiff settled with D.O.T. and amended its pretrial catalog by deleting Bynum and the other D.O.T.-related witnesses. State Farm never amended its witness list to add Bynum. We reject State Farm's argument that because in 1997 it said that it reserved the right to call witnesses on the other parties' pretrial catalogs, it follows that plaintiff was on notice that Bynum was potentially a witness in 1999after plaintiff had dropped Bynum as a witness. There was no fair disclosure. See Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981). It was prejudicial to allow State Farm to call an undisclosed witness to testify about an unpled claim. See id. at 1313-15.
Because the question may arise on remand, we address whether State Farm should have been allowed, during its direct examination of Mr. Bynum, to elicit the fact that Bynum had originally been the plaintiff's expert witness. We conclude that plaintiff's objection on this ground should have been sustained.
On direct examination State Farm brought out the fact that Bynum had been hired by plaintiff and that Bynum gave an opinion to plaintiff that D.O.T. had been negligent. On cross-examination, plaintiff inquired whether negligent design or signage at the flyover relieved the phantom driver of the obligation to use due care, and Mr. Bynum said that it did not. In closing argument, State Farm expounded at length on the fact that Bynum had been hired by plaintiff on the issue of D.O.T.'s negligence but failed to call Bynum to testify, leaving it instead to State Farm to give the whole story to the jury.[4]
*972 Plaintiff was left in an impossible situation. There was, of course, a perfectly good reason why plaintiff did not present Mr. Bynum to the jury as an expert: plaintiff had settled his claim against D.O.T. State Farm was still allowed to ask the jury to attribute part of the responsibility to D.O.T. as a nonparty Fabre defendant,[5] but in that situation, it became the burden of State Farm, not plaintiff, to present expert testimony that D.O.T. had been negligent. See Nash, 678 So.2d at 1264. Explaining these procedural nuances to the jury would be hopelessly confusing and would probably disclose the D.O.T. settlement. Plaintiff was left with no effective way to respond to State Farm's argument that plaintiff had engaged in some sort of coverup.
In these circumstances, State Farm should not have been allowed, on its direct examination, to bring out the fact that Mr. Bynum was originally the plaintiff's expert. See Milburn v. State, 742 So.2d 362, 364 (Fla. 2d DCA 1999) (quoting Charles W. Ehrhardt, Florida Evidence § 702.5 (1998)); Sun Charm Ranch, Inc. v. City of Orlando, 407 So.2d 938, 940 (Fla. 5th DCA 1981). "We question the fairness of a rule that would require a party to explain and apologize to the jury for not having called an expert witness to testify." Sun Charm, 407 So.2d at 940.
State Farm relies on Broward County v. Cento, 611 So.2d 1339 (Fla. 4th DCA 1993), but we think that case is distinguishable. There the plaintiff sued for injuries resulting from a collision between her automobile and a bus owned by the County. The County admitted liability. The issue for trial was damages.
The County retained Dr. Wallquist as its expert. He gave a videotaped deposition and stated his opinion that the plaintiff had suffered a permanent injury as a result of the automobile accident. The County dropped Dr. Wallquist as a witness and the plaintiff hired him.
By motion in limine the County sought to exclude Dr. Wallquist as a witness or alternatively, prohibit any reference to him as having been hired originally by the County. The trial court denied the motion. The videotaped deposition was played to the jury. During the videotaped deposition there were many references by plaintiff's counsel to Dr. Wallquist as the County's doctor. Id. at 1339-40.
On the County's appeal of the plaintiff's verdict, the Fourth District found no error in the trial court's ruling. The Fourth District concluded that where the County had named Dr. Wallquist as a trial expert, and thereafter he was hired by the other side, the trial court had discretion to allow the jury to be told that Dr. Wallquist was originally the County's expert. The Cento court distinguished Sun Charm and Jacksonville Transp. Authority v. ASC Assocs., 559 So.2d 330 (Fla. 1st DCA 1990), on the basis that those did not involve a trial expert.
Although we agree with the ultimate result in Cento, we do not agree with the reasoning. We think that Sun Charm remains the better rule, including for witnesses who have been designated as trial experts.
However, in Cento the trial court was well within permissible latitude in allowing *973 the jury to be told that the County originally hired Dr. Wallquist. That is so because the County presented Dr. Wallquist for a videotaped deposition at which the doctor opined that the plaintiff sustained a permanent injury. The County thereafter disavowed Dr. Wallquist's opinion and tried to take the opposite position at trial, namely, that the plaintiff had not suffered a permanent injury. Under those circumstances the trial court had the discretion to allow the jury to learn by whom Dr. Wallquist had originally been retained.
In the present case, by contrast, the plaintiff does not dispute the right of State Farm to argue that D.O.T. was negligent in its design of the flyover. The main dispute in the case hinged on the amounts of comparative negligence to be charged to D.O.T. and the phantom driver. We think the present case falls more appropriately in Sun Charm's general rule that the jury should not be told during direct examination of the witness that he was originally the expert of the plaintiff.
We add that if on cross-examination the plaintiff opens the door to further inquiry, then State Farm can walk through the door. Thus, if plaintiff were to attack Mr. Bynum's credentials as an expert, then State Farm could bring out the fact that Bynum was originally hired, and relied on, by the plaintiff. Similarly, if plaintiff were to take the position that D.O.T.'s negligence played no part in the accident at all, then State Farm could bring out the fact that Bynum was originally hired by plaintiff to testify that D.O.T. was, in fact, negligent. Plaintiff sued D.O.T. for negligence and accepted a payment in settlement of that claim. Having done so, plaintiff will not be heard to say in defense of the Fabre claim that D.O.T. was entirely without fault.
Because we are reversing for other reasons, we need not reach plaintiff's claim that State Farm's (unobjected to)closing argument was improper.
We see no error in the denial of the motion for directed verdict. Likewise within discretion was exclusion of the evidence of the amount State Farm paid for damage to the Corvette. Plaintiff did not own the vehicle and had no claim for damage to it. Plaintiff says that the magnitude of the State Farm payment would have helped the jury understand the magnitude of the impact of the vehicle with the retaining wall, but the jury had already been told that the vehicle was declared a total loss, and the court's ruling was within discretion.
We agree with plaintiff that a collateral source jury instruction should have been given. In this case the State Farm insurance policy was introduced into evidence, and the face sheet showed that it included no-fault benefits. The plaintiff expressed concern that jurors through personal experience may know that no fault benefits include $10,000 of personal injury protection ("PIP"), and the text of the insurance policy confirms that such benefits are available. Thus, the policy provided a basis on which the jury could infer the payment of collateral source benefits. See Fla. Std. Jury Instr. (Civ.) 6.13 n. 1. Plaintiff points out that the jury's award of economic damages was about $13,000 less than the claim for past medical expenses and lost wages, and argues that the jury may have made a PIP deduction.
State Farm opposed the collateral source instruction on the ground that there had been no actual evidence of the amounts of PIP benefits paid. Be that as it may, we are hard pressed to see how State Farm would have been prejudiced by the giving of the instruction. Should the *974 situation recur on remand, plaintiff would be entitled to the instruction.
On the cross-appeal, we agree that State Farm was entitled to a setoff for the $10,000 in PIP benefits that it paid. Plaintiff does not dispute the fact that he received those benefits. See § 627.736(3), Fla. Stat. (1995).
For the stated reasons, we reverse the judgment and remand the case for a new trial.
NOTES
[1] State Farm had issued an automobile insurance policy to the owner and driver of the Corvette, Teresa Ferguson.
[2] Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from on other grounds, Wells v. Tallahassee Memorial Regional Medical Ctr., Inc., 659 So.2d 249 (Fla.1995).
[3] In a nutshell, plaintiff would have introduced evidence to show that even with the alleged design and signage flaws, most motorists in the lefthand lane stay there and do not abruptly change lanes, striking other motorists. Plaintiff's argument would be that the main responsibility for the accident was that of the phantom driver, not D.O.T.
[4] State Farm said in part:

So Mr. Tilghman creates a case saying that it was not the uninsured motorist, the phantom vehicle, as they are called. Who caused this accident? It is the Florida Department of Transportation. But later he says, I've got this opinion, and you know what, I can't go into court against State Farm with these opinions. I am going to have to come up with something else because this doesn't fit.
And you ask yourself, folks, based on what the Judge is going to instruct you as [to] credibility and believability, where is the believable case here? Who is putting on the evidence for you that gives you the whole scene, that gives you the whole theory of this case? No direct case.
(Emphasis added).
[5] Assuming State Farm timely pled the Fabre claim.