TAYLOR, J.
R.J. Reynolds appeals the final judgment entered on a jury verdict for the Estate of Laura Grossman. R.J. Reynolds argues that the trial court erred in precluding it from contesting certain factual issues, pursuant to Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006). We affirm. See R.J. Reynolds v. Brown, 70 So.3d 707, 717-18 (Fla. 4th DCA 2011) (affirming the use of the Engle findings to *919 establish the conduct element of strict liability claim and duty and breach elements of negligence claim). R.J. Reynolds also argues that the trial court improperly admitted lay witness testimony regarding the decedent’s addiction to cigarettes. We disagree and affirm on this issue as well. Brown, 70 So.3d at 717 (“Mrs. Brown and her daughter provided lay opinion testimony, which, when viewed with the expert testimony, supported a finding of addiction.”). However, on the cross-appeal filed by Jan Grossman, the decedent’s husband and personal representative of her estate, we reverse. The trial court erred by placing Jan Grossman on the verdict form as a liable party and allowing evidence and argument concerning his failure to prevent the decedent from smoking.
Laura Grossman passed away on November 'll, 1995, at the age of thirty-six years, after a prolonged battle with lung cancer. She was survived by her husband and her two young children.
Jan met Laura while operating the register at his variety store, J-Mart Variety. Every day Laura walked across the street to purchase a pack of cigarettes from Jan. They started dating, and they married after a two-year courtship. Throughout their marriage, Laura was a heavy smoker; she smoked “all the time.” She never sought professional help to quit smoking, and Jan never asked her to stop smoking or tried to help her quit. When testifying on the subject of her addiction, Jan testified that, “when she ran out, she was temperamental,” and “it was hard to live with.” He recalled that she once threw a plate of food at him when he would not get her a pack of cigarettes. Another time, Jan had to drive through a blizzard to find a pack for her. According to Jan, “she couldn’t do anything unless she had the cigarettes.” He remembered numerous times when he would have to pull up the gate, disable the alarm, and reopen the J-Mart so she could get a pack or carton of cigarettes.
At the commencement of Phase II of the trial, the Estate orally objected to any argument by R.J. Reynolds that Jan was a comparatively negligent party at fault for Laura’s death. The claim R.J. Reynolds made against Jan, and its reasoning for adding him to the verdict form for apportionment of some fault to him, was essentially that he failed to control Laura’s smoking behavior and supported her habit. Specifically, R.J. Reynolds accused Jan of supplying Laura with cigarettes, smoking in front of her when she was trying to quit smoking, and never discussing the evils of smoking with Laura or encouraging her to quit.
Over the Estate’s objection, the trial court allowed R.J. Reynolds to include Jan on the verdict form as a negligent party and allowed evidence and argument concerning his failure to prevent Laura from smoking. The Estate argues that the trial court’s error in doing so negatively and unfairly limited the damages verdict. The jury awarded only $290,000 to Jan in past damages for the death of his wife and nothing for future emotional damages, $500,000 for pain and suffering to the youngest child, and $800,000 to the oldest child. The jury determined that Jan was 5% at fault for the injuries suffered by his late wife. It apportioned 70% liability to Laura and 25% to R.J. Reynolds. Of the total jury verdict award of $1,934,727.89, the final judgment for the Estate amounted to $483,681.85. The Estate claims it is entitled to a new trial on damages and apportionment of liability.
A nonparty defendant, also known *920 as a Fabre[1] defendant, may not be included on the verdict form until a defendant has proved the nonparty’s negligence at trial:
In order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiffs injuries.
§ 768.81(3)(b), Fla. Stat. (2006). R.J. Reynolds was required to prove Jan’s fault, including the breach of a duty he owed to his late wife, before he could be placed on the verdict form as a nonparty defendant.
The existence of a legal duty is purely a question of law and is subject to de novo review. See McCain v. Fla. Power Corp., 593 So.2d 500, 501-02 (Fla.1992). Additionally, “the mere relationship of husband and wife does not in and of itself constitute a sufficient basis upon which to impute to the wife or husband the negligence of the other.” Ward v. Baskin, 94 So.2d 859, 860 (Fla.1957) (citing Bessett v. Hackett, 66 So.2d 694, 698 (Fla.1953)).
R.J. Reynolds argues that Jan owed Laura a duty because “Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeav- or creates a generalized and foreseeable risk of harming others.” McCain, 593 So.2d at 503. While R.J. Reynolds cites the correct legal rule, we find the argument that Jan created a “zone of risk” to be unpersuasive under the facts of this case. It is patently unreasonable to conclude that Jan created a zone of risk by not preventing Laura from smoking or by acquiescing to her demands that he purchase cigarettes for her. As the Estate points out in its reply brief on cross-appeal, “R.J. Reynolds created the zone of risk by manufacturing a defective product. In essence, Defendant is arguing that Jan created a zone of risk not by engaging in some course of conduct, but by failing to change another person’s course of conduct.”
The Estate argues, and we agree, that R.J. Reynolds could not prove fault on the part of Jan because it failed to present any evidence that he breached a duty. The Estate cites section 314 of the Restatement (Second) of Torts, which provides, “[t]he fact that the actor realizes or should realize that action on his part is necessary for another’s aid or protection does not of itself impose upon him a duty to take such action.” Moreover, as the Estate argues, there is no statutory or common law duty on the part of a husband to control the actions of a wife, nor is there liability on the part of a husband for purchasing a product which is defective.
R.J. Reynolds’s argument concerning Jan’s failure to protect his wife from the foreseeable risk of buying her cigarettes is analogous to a claim that an adult who buys an alcoholic beverage for an alcoholic is liable for the person’s drunkenness. Just as one may legally provide alcohol to another without breaching a duty, one may provide cigarettes to another without breaching a duty.[2] See Bennett v. Godfa *921 ther’s Pizza, Inc., 570 So.2d 1351, 1358 (Fla. 3d DCA 1990) (“The rationale for not holding the establishment liable is that ‘the voluntary drinking of the alcohol, not the furnishing of [the alcohol], [is] the proximate cause of the injury.’ ” (alterations in original) (quoting Barnes v. B.K. Credit Serv., Inc., 461 So.2d 217, 219 (Fla. 1st DCA 1984))). We conclude that a person does not have a legal duty to prevent his or her spouse from voluntarily smoking. Cf. Madison v. Williamson, 241 S.W.3d 145, 154 (Tex.App.2007) (“Nothing inherent in this husband-wife relationship gives rise to a fact issue that either spouse had the right to control the other.”); West v. Hilton Hotels Corp., 714 So.2d 179, 182-83 (La.Ct.App.1998) (husband does not owe a special duty to his wife to prevent her intoxication or to supervise her so as to prevent her from being harmed by the negligence of a third person).
At trial, Jan acknowledged his lack of judgment and “fault” in buying cigarettes for Laura. However, his testimony was an admission of moral responsibility, not legal liability. R.J. Reynolds failed to establish Jan’s breach of any legal duty. Consequently, the trial court erred when it included Jan Grossman on the verdict form.
Having determined that the trial court erred by placing Jan on the verdict form, we now address what remedy the Estate will be entitled to on remand. The Estate argues that it is entitled to a new trial on damages and apportionment because the error — allowing R.J. Reynolds to blame Jan for failing to prevent his wife from smoking and for purchasing cigarettes for her — infected the jury’s determination of damages. According to the Estate, R.J. Reynolds presented Jan as a callous and uncaring spouse, and the jury responded by awarding a small amount of damages for the loss of his wife. In arguing that the jury should include Jan as someone else to blame for Laura’s death, counsel for R.J. Reynolds told the jury:
Jan was not an innocent bystander here. He supplied her with cigarettes from the time they first met back in 1982, all the way through her diagnosis, including the free cigarettes from the store, and the cigarettes he would buy at the Indian Reservation.
He smoked in front of her until 1990, including when she was pregnant with [the oldest child] and when she had quit, including when she went to hypnosis, including when she tried the plastic cigarette, including when she tried the gum.
He never discussed smoking with Laura. That’s the testimony. He never discussed it, let alone encouraged her to quit.
When a Fabre defendant is improperly included on the verdict form, the proper remedy may be an entirely new trial. See Abbott v. Dorleans, 41 So.3d 984, 987 (Fla. 4th DCA 2010). Appellate courts have refused to speculate as to the prejudice resulting from the improper inclusion of a Fabre defendant on a verdict form. Id.; see also Bogosian v. State Farm Mut. Auto. Ins. Co., 817 So.2d 968, 970-71 (Fla. 3d DCA 2002).
The Third District Court of Appeal has held that the improper inclusion of the personal representative of an estate on the verdict form constitutes harmful error and warrants an entirely new trial. Probkevitz v. Velda Farms, LLC., 22 So.3d 609, 615 (Fla. 3d DCA 2009), rev. denied, 39 So.3d 321 (2010). In Probkevitz, a fifteen-year-old girl died in an automobile accident when the vehicle she was (unlawfully) driving collided with a truck owned and operated by Velda Farms. Id. at 611-12. Vel- *922 da Farms filed a motion asserting that the mother, in her individual capacity, was comparatively negligent and that her damages should be reduced based upon her negligence. Id. at 612. They argued that the mother, who was asleep at home when the accident occurred, was to blame for her daughter’s death. Id. The trial court ultimately allowed Velda Farms to argue that the mother’s comparative negligence caused her daughter’s death, and the court permitted Velda Farms to include the mother on the verdict form. Id. The jury returned a verdict in favor of the defense. Id. at 614. The mother appealed, arguing that the trial court’s ruling was baseless. Id.
The Third District Court of Appeal agreed with the mother and reversed. The court held that there was no evidence of the mother’s negligence in the record, and that the trial court erred when it allowed Velda Farms to argue that the mother’s negligence was a cause of her daughter’s death. Id. at 615. The court remanded for an entirely new trial, stating “[inadmissible evidence constitutes grounds for a new trial where the evidence likely results in jury confusion as to the issues and evidence considered.” Id. (citing Goldman v. Bernstein, 906 So.2d 1240, 1241 (Fla. 4th DCA 2005)). “The evidence of [the mother’s] negligence, as well as a question of her negligence on the verdict form, allowed the jury to base their determination of [the driver’s] negligence on facts and circumstances irrelevant to his fault as a driver. This may have improperly confused the jury, influenced their thought process, and prejudiced [the mother].” Id.
Here, the Estate makes a compelling argument that Jan’s inclusion on the ver-diet form prejudiced the jury against him. The jury had already expressed misgivings regarding Jan’s procurement of cigarettes for Laura,[3] and his inclusion on the verdict form could have served as a judicially endorsed vindication of then* misgivings. Furthermore, the low damages awarded may indicate that the jury was prejudiced by evidence and argument regarding Jan’s negligence. As in Probkevitz, there is no way to know how the jury would have decided damages and apportionment had this issue not been injected into the trial. Accordingly, we reverse the final judgment and remand the case for an entirely new trial on all Phase II issues.

Affirmed in part, Reversed in part, and, Remanded for proceedings consistent with this opinion.

CIKLIN and GERBER, JJ., concur.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from on other grounds, Wells v. Tallahassee Mem’l Reg'l Med. Ctr., Inc., 659 So.2d 249, 254 (Fla.1995).

. We acknowledge that there are certain factual scenarios under which a duty may be created by the negligent furnishing of alcoholic beverages. E.g., § 768.125, Fla. Stat. (1980). However, these duties were created by statute; the old common law rule was that no cause of action could be brought for the negligent sale of alcoholic beverages. Ellis v. *921 N.G.N. of Tampa, Inc., 586 So.2d 1042, 1044-45 (Fla.1991).

. After Jan's testimony, a juror asked if "Mr. Grossman [felt] he enabled Laura’s smoking behavior/habit?” and "[c]ould he have done more to encourage her to quit?” The question was objected to, and the objection was sustained.