DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JACOB BRYAN,**
Appellant,

v.

**GALLEY MAID MARINE PRODUCTS, INC.,** a Florida corporation,
d/b/a Off Road Innovations, a/k/a ORI,
Appellee.

No. 4D18-3699

[January 15, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Laurie E. Buchanan, Judge; L.T. Case No. 2017CA000110.

Linda Elise Capobianco of Stone & Capobianco, P.L., Stuart, for appellant.

Louis Reinstein and Jack T. Frost, of Kelley Kronenberg, Fort Lauderdale, for appellee.

FORST, J.

In this negligence case, plaintiff Jacob Bryan appeals from the circuit court's final summary judgment in favor of defendant Galley Maid. The case arose following an incident at Galley Maid's shop, after hours, in which Bryan was violently attacked twice by a third party, James Long. We conclude that genuine issues of material fact remain in this case regarding the reasonable foreseeability of Long's second attack on Bryan, and whether Galley Maid's owner had a duty to render or call for aid after the attacks. Therefore, we reverse the final summary judgment.

**Background**

The record presents the following facts. Bryan was out drinking at a bar one night with Ernest Tumoszwicz (Galley Maid's alleged owner/co-owner), and three other acquaintances, including Long. When the bar closed, the group left and went to Tumoszwicz's shop, Galley Maid. Galley Maid is a business which builds and manufactures equipment for yachts,

and does outside machine shop work and job shop work for other companies.  On this night, the group went to Galley Maid not for business, but to hang out and see a tank which Tumoszwicz had restored.  At the shop, the group continued drinking, and some of the group (including Long) used cocaine.

About fifteen to twenty minutes after the group arrived at Galley Maid, Long attacked Bryan, suddenly and without provocation.  Bryan recalled of the first attack: "I didn't know there was any problems.  We were all talking, socializing, more or less enjoying our evening, and I go to the bathroom to use the restroom and I'm being hit in the back of [the] head, pulled out of the bathroom with my shirt over my head. . . [Long] picks me up and slams me head first on the concrete."  As a result of the first attack, Bryan allegedly lost a tooth, was bleeding from the mouth, and was unconscious for approximately seventeen minutes.[1]

While Bryan was "out," one of the women in the group walked over to him to see if he could sit up.  He could not.  No one administered first aid or attempted to contact the police or call an ambulance.  Tumoszwicz had a cell phone in his truck, and telephones in the shop, but claimed he did not call 911 because he was scared of Long.  At one point, Long gave him a threatening look and told him not to touch Bryan, and to leave him alone because he was fine.  Yet, Tumoszwicz agreed that Long never verbally threatened him.  Tumoszwicz also agreed that "everyone was free to walk through the premises."  In fact, while Bryan lay unconscious for seventeen minutes, Tumoszwicz walked outside to get his iPod out of his truck so he could play music.

When Bryan regained consciousness, he asked Tumoszwicz what had happened, and the two men talked for several minutes.  Tumoszwicz claimed he did not offer to help Bryan at that time because Bryan "was standing there talking to [him]," and "seemed to be okay."  However, Tumoszwicz also gave sworn testimony that Bryan did not "look like he [was] in too good a shape," that he was "disoriented and . . . not sure what was going on," and that Tumoszwicz was concerned for Bryan's safety "[e]ver since the first assault happened," and "throughout the entire evening."

---

[1] The events in question, including both attacks, were purportedly captured by security cameras inside and outside of the Galley Maid shop.  The video recording, which Bryan relied on in support of his response to Galley Maid's motion for summary judgment, is not included in the appellate record.

After talking with Tumoszwicz, Bryan walked outside with Long to the parking lot, where Long attacked Bryan a second time. Long purportedly attacked Bryan again because "[Bryan] told him he didn't give him a fair chance. So he took him outside and gave him a fair chance." The second attack rendered Bryan unconscious again, and Tumoszwicz saw Bryan laying on the ground after the attack.

Shortly after the second attack, Long helped Bryan to get back on his feet, and the two men reentered the building. One of the women helped Bryan put his shirt back on, but again, no one called for medical attention. Tumoszwicz testified that he did not call 911, because he was "still scared" and because Bryan "was up and moving around." Instead, he told everyone to leave and went to bed in his RV on the property. Bryan left the shop in a car with Long. Long was later arrested, charged, and convicted of aggravated battery.

Bryan sued Galley Maid for negligence, alleging he was an invitee on Galley Maid's premises, and that Galley Maid, through its director/agent Tumoszwicz, knew or should have known that Bryan was injured and/or incapacitated and therefore had a duty "to exercise reasonable care and to take reasonable action to give or secure first aid." Bryan also alleged that Tumoszwicz knew or should have known that Long posed a risk of harm to Bryan and that he (Bryan) was permanently injured as a result of the incident, and that his injuries (a broken neck, facial fractures, nerve damage, and an avulsed tooth) "occurred as a result of and were proximately caused by the careless, negligent, grossly careless, and reckless conduct of" Galley Maid.

Galley Maid moved for summary judgment. Galley Maid argued that Bryan was a licensee on its premises, not an invitee, so the only duty Galley Maid owed to Bryan was to refrain from wanton negligence, willful misconduct, or intentionally exposing Bryan to danger. Because Long's first attack was not foreseeable, Galley Maid argued, it did not breach any duty with respect to the first attack. As to the second attack, Galley Maid contended that (1) absent a "special relationship" between the parties, Galley Maid had no duty to protect Bryan, and (2) it did not breach any duty because it did not control the premises at the time of the second attack. Galley Maid argued in the alternative that, even if Bryan was an invitee, Galley Maid did not breach any duty because neither of Long's attacks was foreseeable. As to its alleged negligence in not seeking medical assistance for Bryan, Galley Maid argued only that the allegation was "also fatally flawed." Lastly, Galley Maid maintained that Bryan "cannot establish any proof of proximate causation since Galley Maid . . . did not

have actual or constructive knowledge that Mr. Long would assault the Plaintiff."

Bryan filed a response in opposition to the motion for summary judgment, and the circuit court held a hearing. At the conclusion of the summary judgment hearing, the court stated: "Morally, it's extremely bothersome that nobody did anything . . . morally, I think it is just a horrific situation." Nevertheless, the circuit court ruled that no legal duty existed absent a "special relationship" between the parties:

> The bottom line is [for] the Defendant[,] there was no benefit whatsoever for the Plaintiff being on the premises other than folks wanting to see this. It wasn't like [Tumoszwicz] was engaged in the course of business, he wasn't trying to sell . . . the Plaintiff anything. There just was no special relationship that existed that would cause that.

The circuit court also concluded a duty did not exist because both attacks were "unforeseeable criminal act[s]." The court stated: "The first battery definitely was. And the second battery, quite frankly, the idea of somebody doing that the first time, let alone the second time, is pretty shocking. So I don't find either attack was at all foreseeable." The court also appeared to conclude that the plaintiff could not establish causation without an impermissible stacking of inferences:

> [T]here's nothing showing that the failure to call or render aid is -- and without stacking inferences, . . . I can't stack inferences. If [Tumoszwicz] or anybody would have called 911, then maybe 911 would have gotten there in time, then maybe the two, Mr. Bryan and Mr. Long, wouldn't have had words. Because, obviously, they -- Mr. Bryan didn't swing a punch or wouldn't have had words and then maybe the second attack wouldn't have occurred.

> And, quite frankly, there hasn't been any evidence, there is no evidence which was the first attack or second attack that occurred that caused the injuries. Although, it was pretty obvious from the second -- from the video that the first attack was horrible, to say the least.

The circuit court subsequently entered its order granting Galley Maid's motion for summary judgment and final judgment. This appeal followed.

**Analysis**

On appeal, Bryan argues the circuit court erred in granting summary judgment in favor of Galley Maid as genuine issues of material fact existed regarding the duty of care owed to Bryan. Specifically, Bryan argues the court erroneously determined that because Bryan was not on Galley Maid's premises for a business purpose, he lacked a "special relationship" with Galley Maid such that Galley Maid owed Bryan no duty to protect him from Long, to summon law enforcement, or to call 911 for assistance. Bryan further contends that genuine issues of material fact existed regarding the foreseeability of Long's tortious conduct.

Galley Maid responds that summary judgment in its favor was proper because—regardless of Bryan's legal status on the property—no genuine issue of material fact remained on the element of duty, where Galley Maid's agent, Tumoszwicz, could not have reasonably foreseen either of Long's violent attacks. Galley Maid further argues that Tumoszwicz did not have a duty to procure first aid for Bryan under the circumstances.

We have de novo review. *See Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (standard of appellate review applicable to grant of summary judgment is de novo); *see also R.J. Reynolds Tobacco Co. v. Grossman*, 96 So. 3d 917, 920 (Fla. 4th DCA 2012) ("The existence of a legal duty is purely a question of law and is subject to *de novo* review."); *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009) ("Foreseeability as it relates to duty in negligence cases is a question of law.").

"Summary judgment is appropriate only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Additionally, all inferences must be made in favor of the non-moving party." *Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004) (citation omitted). "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985).

"The elements of a negligence cause of action are duty, breach, causation, and damages." *Miller By & Through Miller v. Foster*, 686 So. 2d 783, 783 (Fla. 4th DCA 1997). As to the duty element, "[i]n ordinary negligence cases, the defendant owes the plaintiff a duty of reasonable care, regardless of the relationship between the defendant and plaintiff. However, in premises liability cases, the defendant's duty to the plaintiff is dependent on the plaintiff's status to the land." *Nicholson v. Stonybrook*

*Apartments, LLC*, 154 So. 3d 490, 492 (Fla. 4th DCA 2015) (citation omitted).

Below, Bryan claimed that his status to the land was that of "invitee," while Galley Maid maintained that Bryan was a "licensee." As this court recently reiterated: "Invitees . . . include anyone present on a premises via express or reasonably implied invitation of the property owners." *Charterhouse Assocs., Ltd., Inc. v. Valencia Reserve Homeowners Ass'n, Inc.*, 262 So. 3d 761, 765 (Fla. 4th DCA 2018) (citing *Wood v. Camp*, 284 So. 2d 691, 695 (Fla. 1973)). Indeed, in *Wood*, our supreme court "eliminate[d] the distinction between commercial (business or public) visitors and social guests upon the premises," and declared it would "apply[] to both the single standard of reasonable care under the circumstances. *See Wood*, 284 So. 2d at 695 ("In doing so, we continue the category of licensees who are Uninvited, that is, persons who choose to come upon the premises solely for their own convenience without invitation either expressed or reasonably implied under the circumstances.").

Here, the record evidence reflects that Bryan was expressly invited onto Galley Maid's premises by the premises' owner, and his status was therefore that of an invitee. *See Charterhouse Assocs.*, 262 So. 3d at 765 (citing *Wood*).

As for the duty of a property owner to protect an invitee from a criminal attack, this court has held:

> *As a basic principle of law, a property owner has no duty to protect one on his premises from criminal attack by a third person.* Even though one's negligence may be a cause in fact of another's loss, he will not be liable if an independent, intervening and unforeseeable criminal act also causes the loss. ***If, however, the criminal attack is reasonably foreseeable, a duty may arise*** between a landowner and his invitee. But it must be borne in mind that *a landowner is not an insurer of the safety of his invitees and is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate.*
>
> In order to impose a duty upon a landowner to protect an invitee from criminal acts of a third person[,] a plaintiff[] invitee, must allege and prove that the landowner had actual or constructive knowledge of prior, similar criminal acts committed upon invitees. . . .

6

*Relyea v. State*, 385 So. 2d 1378, 1382-83 (Fla. 4th DCA 1980) (emphasis added) (internal citations omitted), *disapproved of on other grounds by Avallone v. Bd. of Cty. Comm'rs of Citrus Cty.*, 493 So. 2d 1002 (Fla. 1986), and *Bruce By & Through Wallace v. Vill. of Miami Shores*, 496 So. 2d 984 (Fla. 3d DCA 1986); *see also Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 103 (Fla. 4th DCA 2017) (quoting *Leitch v. City of Delray Beach*, 41 So. 3d 411, 412 (Fla. 4th DCA 2010)) ("[A] property owner 'is ordinarily under no duty to exercise any care to warn or guard against the harmful acts of a third party unless that third party's harmful behavior is reasonably foreseeable.'").

Here, the record evidence reflects that Long's first attack on Bryan was not reasonably foreseeable. The first attack happened shortly after the group arrived at Galley Maid and caught everyone in the group, including Bryan himself, by surprise. While Bryan's counsel argued below that "[t]he evidence *is going to bear out* that James Long has a long criminal history," the record evidence does not reflect that Tumoszwicz knew of Long's criminal history or of any "dangerous propensities" before the first attack.

As for the second attack, however, the evidence was conflicting as to whether it was reasonably foreseeable. The circuit court concluded, "the second battery, quite frankly, the idea of somebody doing that the first time, let alone the second time, is pretty shocking." However, Bryan attested in his affidavit filed in opposition to the motion for summary judgment that, in between the two attacks Long "continued to taunt, bully, harass, and threaten [him] with violence." Tumoszwicz had also testified under oath that he was concerned for Bryan's safety "[e]ver since the first assault happened," and "[t]hroughout the entire evening." Thus, while we agree with the circuit court's conclusion that the defendant did not owe a duty to protect the plaintiff from the first attack, as it was unforeseeable, we conclude that genuine issues of material fact exist as to whether the second attack was reasonably foreseeable.

We further conclude that genuine issues of material fact exist as to whether Tumoszwicz/Galley Maid had a duty to render or call for aid after the attacks. This court has agreed with the principle "that a proprietor is under an ordinary duty of care to render aid to an invitee after he knows or has reason to know the invitee is ill or injured." *Estate of Starling v. Fisherman's Pier, Inc.*, 401 So. 2d 1136, 1138 (Fla. 4th DCA 1981) (citing *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W. Va. 689 (1980), and the Restatement of Torts (Second) § 314A). This court also has referenced comment (f) to the Restatement (Second) of Torts § 314A, which states:

f. The defendant is not required to take any action *until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. [The defendant] is not required to take any action beyond that which is reasonable under the circumstances.* In the case of an ill or injured person, [the defendant] will seldom be required to do more than give such first aid as [the defendant] reasonably can, and take reasonable steps to turn the [plaintiff] over to a physician, or to those who will look after him and see that medical assistance is obtained. [The defendant] is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of [that person], or whose friends are present and apparently in a position to give [that person] all necessary assistance.

*Id.* at 1137 n.2 (emphasis added); *see also L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 557 (Fla. 4th DCA 2008) (citing *Starling* and Restatement (Second) of Torts § 314A, for the proposition that a proprietor is under an ordinary duty of care to render aid to an invitee after he knows or has reason to know the invitee is ill or injured).

Here, record evidence existed that Tumoszwicz knew or had reason to know that Bryan was endangered or injured *after* the first attack—which rendered him unconscious for seventeen minutes—*and* after the second attack, which again rendered him unconscious—yet Tumoszwicz took no action. He failed to give Bryan any first aid or call for medical assistance. Instead, while Bryan lay unconscious after the first attack, Tumoszwicz went out to his truck (where he had a cell phone) to retrieve his iPod. Furthermore, the record evidence reflects that no one else in the group at Galley Maid had "taken charge of" Bryan or was "in a position to give him all necessary assistance." *See Starling*, 401 So. 2d at 1137 n.2 (citing comment (f) to the Restatement (Second) of Torts § 314A). Other than an unsuccessful attempt to sit Bryan up after the first attack and helping him put his shirt back on after the second attack, no assistance was provided to Bryan.

While Bryan was apparently able to walk and talk after regaining consciousness from both attacks, he was "disoriented" after the first attack and "not sure what was going on." Finally, as for Tumoszwicz's purported fear of Long for his own safety, Long never verbally threatened him, and Tumoszwicz agreed that "everyone was free to walk through the premises."

In short, genuine issues of material fact remain concerning Galley Maid's duties to Bryan and its possible breach of those duties.

Bryan also argues the circuit court erred in entering summary judgment on the ground that Bryan did not establish proximate causation. Proximate cause, as well as breach and damages, are typically factual questions for a jury. *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 205 (Fla. 2007) (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503–04 (Fla. 1992)); *see also Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 389 (Fla. 2015) (noting that the Court has "clearly stated that" breach, proximate causation, and damages "are to be resolved by the fact-finder"). Bryan made a sufficient showing in opposing summary judgment to create genuine issues of material facts on these elements. Accordingly, we also reverse the circuit court to the extent it granted summary judgment to Galley Maid on the element of proximate cause.

## Conclusion

Because it was error to grant summary judgment in favor of Galley Maid where genuine issues of material fact remain, we reverse the final summary judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

CIKLIN and GERBER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

9